# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| MERIDIAN DENTAL | § | |
| LABORATORIES, LTD., | § | |
| **Plaintiff,** | § | |
| v. | § | Civil Action No. 3:21-CV-1189-S-BH |
| | § | |
| SONNY CHIANG a/k/a SONNY | § | |
| KIA-SANG CHIANG a/k/a KIA-SANG | § | |
| CHIANG a/k/a SONNY KIN SANG | § | |
| CHIANG a/k/a SONNY KINSANG | § | |
| CHIANG a/k/a SONNY KIN-SANG | § | |
| CHIANG a/k/a KIN SANG CHIANG | § | |
| a/k/a JIANSHENG JIANG, | § | |
| **Defendant.** | § | Referred to U.S. Magistrate Judge |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION

By electronic order of reference dated April 30, 2022 (doc. 24), before the Court is *Plaintiff's Motion and Memo in Support of Motion for Default Judgment*, filed April 29, 2022 (doc. 23). Based on the relevant filings and applicable law, the motion for default judgment should be **GRANTED**.

## I. BACKGROUND

On May 24, 2021, Meridian Dental Laboratories, Ltd. (Plaintiff) sued Sonny Chiang, a/k/a Sonny Kia-Sang Chiang a/k/a Kia-Sang Chiang a/k/a Sonny Kin Sang Chiang a/k/a Sonny Kinsang Chiang a/k/a Sonny Kin-Sang Chiang a/k/a Kin Sang Chiang a/k/a Jiansheng Jiang (Plaintiff) for breach of fiduciary duty, common law fraud, civil theft under the Texas Theft Liability Act (TTLA), conversion, and fraudulent concealment. (doc. 1 at 8-13.)[1]

Defendant was a salaried sales manager for Plaintiff from June 2017 to May 2019. (doc. 29 at 4.) In that role, he marketed and sold dental products to Highland Dental Laboratory, LLC

---

[1]Citations to the record refer to the CM/ECF system page number at the top of each page rather than the page numbers at the bottom of each filing.

(Customer) and had exclusive responsibility for all interactions with Customer, including sales, billing, and payment collection. (*Id.*) Beginning in August 2017, Defendant directed Customer to wire payments for dental products purchased from Plaintiff to his personal bank accounts without any authorization or direction from Plaintiff. (*Id.*) From between August 2017 and April 2019, Customer followed Defendant's instructions and wired more than $400,000 of payments to his bank account, believing each wire was to Plaintiff's bank accounts in payment for goods purchased from it. (*Id.* at 4-5.) During this period, Defendant made false representations to Plaintiff that Customer had not made payments for purchased products and falsified account statements that misrepresented Customer's account balance. (*Id.* at 5.)

In May 2019, Plaintiff contacted Customer about its past due balances and was told about the payments wired to Defendant's bank account. (*Id.* at 6.) Plaintiff removed Defendant as its sales manager and investigated his past dealings with Customer and its account records. (*Id.*) Plaintiff completed its investigation the following month, and demanded that Defendant return the payments that had been improperly wired to his account; he refused to return any of the stolen payments. (*Id.*)

On August 17, 2021, Plaintiff filed its first amended complaint, and a summons was issued for Defendant the following day. (docs. 6; 8.) On September 8, 2021, Plaintiff's motion for substituted service on Defendant was granted, and it properly served him through the Texas Secretary of State that same day. (docs. 10; 15.) After Defendant failed to answer or respond to the first amended complaint, it sought and obtained entry of default on November 22, 2021. (docs. 16-17.) On January 5, 2022, Plaintiff was granted leave to file its second amended complaint to add all of Defendant's known aliases. (docs. 19; 20.) On January 3, 2023, Plaintiff was ordered to file an amended complaint to address certain deficiencies in its jurisdictional pleadings, and it filed its

third amended complaint on January 24, 2023. (doc. 26-27.) Because the complaint still failed to adequately allege Plaintiff's citizenship, Plaintiff was again ordered to file an amended complaint on January 27, 2023. (doc. 28.) On January 30, 2023, Plaintiff filed its fourth amended complaint. (doc. 29.)

Plaintiff seeks compensatory damages against Defendant for breach of fiduciary duty, fraud, and theft under the TTLA. (docs. 23 at 3; 29 at 14-15.)[2] It also seeks to recover attorney's fees and pre- and post-judgment interest. (*Id.*)

## II. MOTION FOR DEFAULT JUDGMENT

Plaintiff moves for default judgment under Rule 55 of the Federal Rules of Civil Procedure. (*See* doc. 23.)

Rule 55 sets forth the conditions under which default may be entered against a party, as well as the procedure to seek the entry of default judgment. There is a three-step process for securing a default judgment. *See New York Life Ins. Co. v. Brown*, 84 F.3d 137, 141 (5th Cir. 1996). First, a default occurs when a party "has failed to plead or otherwise defend" against an action. Fed. R. Civ. P. 55(a). Next, an entry of default must be entered when the default is established "by affidavit or otherwise." *See id.*; *New York Life Ins. Co.*, 84 F.3d at 141. Third, a party may apply to the clerk or the court for a default judgment after entry of default. Fed. R. Civ. P. 55(b); *New York Life Ins. Co.*, 84 F.3d at 141. Here, because Defendants have failed to plead or otherwise defend, and Plaintiff has obtained an entry of default on them, the first two requisites for a default judgment have been met. (docs. 11, 13, 16.) Remaining for determination is whether a default judgment is

---

[2]Although the fourth amended complaint asserts separate claims for conversion and fraudulent concealment, it does not request any relief for those claims as part of its prayer for relief section. (doc. 29 at 13-15.) Additionally, Plaintiff does not seek default judgment for those claims. (*See* doc. 23.)

3

warranted.

"'Default judgments are a drastic remedy, not favored by the Federal Rules and resorted to by courts only in extreme situations.'" *Lewis v. Lynn*, 236 F.3d 766, 767 (5th Cir. 2001) (quoting *Sun Bank of Ocala v. Pelican Homestead & Sav. Ass'n*, 874 F.2d 274, 276 (5th Cir. 1989)). Moreover, "a party is not entitled to a default judgment as a matter of right, even where the defendant is technically in default." *Id.* (quoting *Ganther v. Ingle*, 75 F.3d 207, 212 (5th Cir. 1996) (per curiam)). "There must be a sufficient basis in the pleadings for the judgment entered." *Nishimatsu Constr. Co. v. Hous. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975). Only well-pleaded facts, not conclusions of law, are presumed to be true. *Id.* Default judgment "should not be granted on the claim, without more, that the defendant had failed to meet a procedural time requirement." *Mason & Hanger–Silas Mason Co., Inc. v. Metal Trades Council*, 726 F.2d 166, 168 (5th Cir. 1984) (per curiam).

The decision to enter a judgment by default is discretionary. *Stelax Indus., Ltd. v. Donahue*, No. 3:03-CV-923-M, 2004 WL 733844, at *11 (N.D. Tex. Mar. 25, 2004). "Any doubt as to whether to enter or set aside a default judgment must be resolved in favor of the defaulting party." *John Perez Graphics & Design, LLC v. Green Tree Inv. Grp., Inc.*, No. 3:12-CV-4194-M, 2013 WL 1828671, at *3 (N.D. Tex. May 1, 2013) (citing *Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998)). In determining whether the entry of a default judgment is appropriate, courts look to whether default judgment is procedurally warranted, whether the plaintiff's complaint provides a sufficient factual basis for the plaintiff's claim for relief, and whether the requested relief is appropriate. *See J & J Sports Prods., Inc. v. Morelia Mexican Rest., Inc.*, 126 F. Supp. 3d 809, 813 (N.D. Tex. 2015) (citing *United States v. 1998 Freightliner Vin #: 1FUYCZYB3WP886986*, 548 F.

4

Supp. 2d 381, 384 (W.D. Tex. 2008) (citing *James v. Frame*, 6 F.3d 307, 310 (5th Cir. 1993)).

## A.    Procedural Requirements

Courts consider numerous factors in deciding whether to grant a motion for default judgment. 10A CHARLES ALAN WRIGHT, ARTHUR R. MILLER, MARY KAY KANE & RICHARD L. MARCUS, FEDERAL PRACTICE AND PROCEDURE § 2685 (3d ed. 1998). The applicable factors include: (1) the amount of money involved; (2) whether there are material issues of fact or issues of substantial public importance at stake; (3) whether the default is technical in nature; (4) the extent of prejudice to the plaintiff due to the delay; (5) whether the grounds for default are clearly established; (6) the harsh effect of a default judgment; (7) whether the default resulted from a good faith mistake or excusable neglect on the defendant's part; (8) whether the plaintiff's actions contributed to delay; and (9) whether the court would be obligated to set aside the default on motion by the defendant. *Id.*; *see Lindsey*, 161 F.3d at 893 (citing 10A WRIGHT, MILLER, KANE & MARCUS, FEDERAL PRACTICE AND PROCEDURE § 2685); *Stelax Indus., Ltd.*, 2004 WL 733844, at *11 (same).

Plaintiff seeks $448,716.56 in compensatory damages, $23,523.75 in attorney's fees, and interest. (doc. 23 at 3.) It provides the affidavits of Plaintiff's representative and Customer's owner, which verify the allegations in the fourth amended complaint. (docs. 23-2; 23-3.) They state that Customer had sent 57 wire payments totaling $448,716.56 to Plaintiff, and identify the dates and amounts of each wire payment. (*Id.*) It also includes the declaration from its counsel in this lawsuit stating that the $23,523.75 in attorney's fees incurred were reasonable and necessary, and billing invoices showing the work performed, hourly rates, and fee amount for each task. (doc. 23-4.)

Under the first factor, although the total amount requested could be considered substantial, that "is not dispositive." *US Green Bldg. Council, Inc. v. Wardell*, No. 3:14-CV-01541-M-BH, 2016

WL 3752964, at *3 (N.D. Tex. June 17, 2016), *adopted by* 2016 WL 3766362 (N.D. Tex. July 11, 2016).  Regarding the second factor, there are no material issues of fact in dispute as Defendant has failed to file any responsive pleadings in this case.[3] *See Nishimatsu Constr. Co.*, 515 F.2d at 1206 (noting that "[t]he defendant, by his default, admits the plaintiff's well pleaded allegations of fact"). Although the default appears to be technical in nature (third factor), Plaintiff is prejudiced and harmed by the continued delay in this case, which is the fourth factor. *See United States v. Fincanon*, No. 7:08-CV-61-O, 2009 WL 301988, at *2 (N.D. Tex. Feb. 6, 2009) (holding that a plaintiff's interests were prejudiced because the defendant's failure to respond brought the adversary process to a halt).  Under the fifth and sixth factors, the grounds for default are clearly established, and a default judgment is not unusually harsh under these facts given that Defendant has received ample notice of this action and sufficient time to respond. *See Lindsey*, 161 F.3d at 893; *see also J & J Sports Prods.*, 126 F. Supp. 3d at 814 ("Defendants' failure to respond to Plaintiff's Complaint or otherwise appear in this case for the past ten months 'mitigat[es] the harshness of a default judgment.'") (citations omitted).  The seventh, eighth, and ninth factors similarly favor default judgment because Defendant has not offered any evidence that his failure to answer was the product of a good faith mistake or excuse, Plaintiff has not contributed to the delay in this case, and there does not appear to be any basis upon which the Court would be obligated to set aside the default. *See Lindsey*, 161 F.3d at 893

Because Defendant was properly served in this action and failed to answer or otherwise defend himself, the grounds for default judgment are clearly established. (*See* docs. 15; 21-22.) Accordingly, the procedural prerequisites for a default judgment are satisfied.  *See Ramsey*, 2016

---

[3]Plaintiff includes a copy of a military service declaration and a status report from the Department of Defense Manpower Data Center showing that Defendant is not in the military. (*See* doc. 23-1.)

WL 1701966, at *3.

## B. **Entitlement to Judgment**

Plaintiff moves for default judgment on its claims against Plaintiff for breach of fiduciary duty, fraud, and civil theft under the TTLA. (doc. 23 at 1.)

Where, as here, a default has been entered under Rule 55, "the factual allegations of the complaint are taken as true." *Pathway Senior Living LLC v. Pathways Senior Living LLC*, No. 3:15-CV-02607-M, 2016 WL 1059536, at *2 (N.D. Tex. Mar. 17, 2016). In determining whether there is a sufficient basis in the pleadings for judgment, the Fifth Circuit "draw[s] meaning from the case law on Rule 8." *Wooten v. McDonald Transit Assocs., Inc.*, 788 F.3d 490, 497 (5th Cir. 2015). Factual allegations in the complaint need only "be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The pleading must present "more than an unadorned, the-defendant-unlawfully-harmed-me accusation," but "detailed factual allegations" are not required. *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). This "low threshold" is less rigorous than that under Rule 12(b)(6). *Id.* at 498. Recognizing that "a defendant must invoke Rule 12 in order to avail itself of that Rule's protections, [while] a default is the product of a defendant's inaction," the Fifth Circuit has "decline[d] to import Rule 12 standards into the default-judgment context." *Id.* at 498 n.3.

### 1. *Breach of Fiduciary Duty*

Under Texas law,[4] the essential elements of a breach of fiduciary duty claim are "(1) a

---

[4]"It is a long-recognized principle that federal courts sitting in diversity cases 'apply state substantive law and federal procedural law.'" *Shady Grove Orthopedic Assoc., P.A., v. Allstate Ins. Co.*, 559 U.S. 393, 417 (2010) (quoting *Hanna v. Plumer*, 380 U.S. 460, 465 (1965)). Here, the alleged facts underlying Plaintiff's claims appear to derive from conduct that occurred in, or were directed to, the State of Texas. *See De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1413 (5th

fiduciary relationship must exist between the plaintiff and defendant; (2) the defendant must have breached his fiduciary duty to the plaintiff; and (3) the defendant's breach must result in injury to the plaintiff or benefit to the defendant." *Hunn v. Dan Wilson Homes, Inc.*, 789 F.3d 573, 581 (5th Cir. 2015) (quoting *Graham Mortg. Corp. v. Hall*, 307 S.W.3d 472, 479 (Tex. App.—Dallas 2010, no pet.)). Whether a party owes a fiduciary duty is a question of law. *Meyer v. Cathey*, 167 S.W.3d 327, 330 (Tex. 2005). Courts impose fiduciary duties on parties based on the special nature of the relationships between such parties. *Johnson v. Brewer & Pritchard, P.C.*, 73 S.W.3d 193, 199 (Tex. 2002). A fiduciary duty arises from certain formal relationships as a matter of law, such as an attorney-client or trustee relationship. *Id.* Courts also recognize an informal fiduciary duty that arises from "a moral, social, domestic or purely personal relationship of trust and confidence." *Associated Indem. Corp. v. CAT Contracting, Inc.*, 964 S.W.2d 276, 287 (Tex. 1998).

Here, Plaintiff alleges in its fourth amended complaint that Defendant owed fiduciary duties to it, including the duties of loyalty and care, as he was in a position of trust and confidence as Plaintiff's sales manager, and Plaintiff relied on and trusted Defendant to perform his responsibilities and make decisions in its best interest. (doc. 29 at 10.) It alleges that Defendant breached his fiduciary duties to Plaintiff when he used his position of trust and confidence to wrongfully transfer more than $400,000 of Plaintiff's cash assets to himself for his own personal benefit, rather than in the interest of his employer. (*Id.*) Plaintiff also provides the affidavit of its representative, stating that Defendant served as the sales director for Plaintiff, that Plaintiff relied on him to manage Customer's account, including payments on invoices sent to Customer, and that Defendant received 57 wire payments totaling $488,716.56 that were meant for Plaintiff. (doc. 23-2 at 2-3.) Based on

Cir. 1995) ("[T]he law of the state with the most significant relationship to the particular substantive issue will be applied to resolve that issue.") (citation omitted). The parties do not dispute that Texas law applies.

these allegations and evidence, Plaintiff has provided a sufficient basis for recovering against Defendant for breach of fiduciary duty. *See Wooten*, 788 F.3d at 497.

### 2.    *Common Law Fraud*

In Texas, the elements of common law fraud are: (1) the defendant made a representation to the plaintiff; (2) the representation was material; (3) the representation was false; (4) when the defendant made the representation, the defendant knew it was false or made the representation recklessly and without knowledge of its truth; (5) the defendant made the representation with the intent that the plaintiff act on it; (6) the plaintiff relied on the representation; and (7) the representation caused the plaintiff injury. *Shandong Yinguang Chem. Indus. Joint Stock Co., Ltd. v. Potter*, 607 F.3d 1029, 1032-33 (5th Cir. 2010) (citing *Ernst & Young, L.L.P. v. Pacific Mut. Life Ins. Co.*, 51 S.W.3d 573, 577 (Tex. 2001)). Rule 9(b) contains a heightened pleading standard and requires a plaintiff to plead the circumstances constituting fraud with particularity. *See* Fed. R. Civ. P. 9(b); *City of Clinton, Ark. v. Pilgrim's Pride Corp.*, 632 F.3d 148, 153 (5th Cir. 2010). "[A]rticulating the elements of fraud with particularity requires a plaintiff to specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Williams v. WMX Techs.*, 112 F.3d 175, 177 (5th Cir. 1997). "Put simply, Rule 9(b) requires 'the who, what, when, where, and how' to be laid out" with respect to a fraud claim. *Benchmark Electronics, Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003) (internal quotations and citations omitted).

Here, the fourth amended complaint alleges that between August 2017 and April 2019, Defendant "effected fifty-seven (57) fraudulent transfers from [Customer] to his personal bank accounts." (doc. 29 at 11.) It alleges that Defendant mispresented to Plaintiff the Customer's account

balances "by falsifying account statements and otherwise misrepresenting payment status in order to maintain the appearance that the [Customer] account balance was accurate, albeit past due," and that these misrepresentations were material and made with the intent to defraud Plaintiff. (doc. 29 at 5, 10-11.) It also alleges that Plaintiff "relied on these misrepresentations to its detriment, because while it appeared that [Customer] was late on certain payments, [Customer] had in fact made the payments in question by wire transfer, at the direction of Defendant, to Defendant's personal bank accounts," and that Plaintiff "was consequently injured by the theft of more than $400,000 as a result of the Defendant's fraudulent scheme." (doc. 29 at 5, 10-11.)  Plaintiff's allegations clearly detail the who, what, when, where, and how of the fraud.  *See Benchmark Electronics*, 343 F.3d at 724. Accordingly, the pleadings and evidence set forth a sufficient basis for its common law fraud claim against Defendant under both Rules 8 and 9. *See Wooten*, 788 F.3d at 497.

### 3.    *Violations of the TTLA*

To succeed on a claim for civil theft under the TTLA, the plaintiff must demonstrate that "(1) the plaintiff had a possessory right to property or was the provider of services; (2) the defendant unlawfully appropriated property or unlawfully obtained services in violation of certain sections of the Penal Code; and (3) the plaintiff sustained damages as a result of the theft." *Wellogix, Inc. v. Accenture, LLP*, 788 F. Supp.2d 523, 542 (S.D. Tex. 2011) (citing Tex. Civ. Prac. & Rem.Code §§ 134.002(2), 134.003, 134.005(a); Tex. Penal Code §§ 31.03(a), 31.05). Under § 31.03 of the Texas Penal Code, "a person commits theft if he unlawfully appropriates property with the intent to deprive the owner of the property." Tex. Penal Code § 31.03(a). Section 31.01(5)(C) of the Texas Penal Code defines property to include money or a document that represents anything of value. *See id.* § 31.01(5)(C). Appropriation of property is unlawful if it is without the owner's effective consent. *Id.*

10

§ 31.03(b). Consent is not effective, if among other things, it is induced by deception. *Id.* § 31.01(3)(A). "Deception" means "creating or confirming by words or conduct a false impression of law or fact that is likely to affect the judgment of another in the transaction, and that the actor does not believe to be true" or "failing to correct a false impression of law or fact that is likely to affect the judgment of another in the transaction, that the actor previously created or confirmed by words or conduct, and that the actor does not now believe to be true." *Id.* §§ 31.01(1)(A) & (B)**.**

Here, the fourth amended complaint alleges that Plaintiff had a possessory right to the $448,716.56 in payments Customer had made for the dental products purchased from Plaintiff, and that Defendant's fraudulent transfer of and exercise of control over those cash assets were unlawful. (doc. 29 at 12.) It alleges that Defendant intended to deprive Plaintiff of its property, as he refused its demand for the return of "the cash assets he improperly transferred to himself." (*Id.*) It also alleges that Plaintiff has been damaged by Defendant's failure to return its stolen property, including being "forced to spend time and resources to recoup these losses." (*Id.* at 13.) Based on these allegations, Plaintiff has adequately set forth a substantive cause of action for civil theft under the TTLA. *See Wooten*, 788 F.3d at 497; *see, e.g., Geiken v. Worku*, No. 3:15-CV-2442-B, 2017 WL 1709692, at *6 (N.D. Tex. May 2, 2017) (finding allegations that "Defendant appropriated Plaintiff's share of the receivables with the intent to permanently deprive him of them; that Defendant did not have Plaintiff's consent to keep and use his share of the receivables; and that Plaintiff suffered actual damages," provided a sufficient basis for default judgment on a TTLA claim).

## C.    Entitlement to Remedies

Plaintiff's motion for default judgment seeks to recover $448,716.56 in actual damages, plus

interest. (doc. 23 at 3.)  It also seeks $23,523.75 in attorney's fees. (*Id.*)[5]

In awarding relief, "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c).  The relief requested in a plaintiff's complaint limits the relief available in a default judgment. *See Sapp v. Renfroe*, 511 F.2d 172, 176 n. 3 (5th Cir. 1975).  Damages on a default judgment are normally not awarded without a hearing or a demonstration by detailed affidavits; a hearing is unnecessary, however, if the amount of damages can be determined with a mathematical calculation by reference to the pleadings and supporting documents. *See James*, 6 F.3d at 310.  The plaintiff has the burden to provide an evidentiary basis for the damages it seeks.  *Broadcast Music, Inc. v. Bostock Billiards & Bar Assoc.*, No. 3:12-CV-413-B, 2013 WL 12126268, at *3 (N.D. Tex. Jan. 18, 2013).  Because the requested relief does not differ in kind from, or exceed in amount, of what is demanded in the pleadings, remaining for determination is whether the relief requested is appropriate based on governing law. *Chevron Intellectual Property, LLC v. Allen*, No. 7:08-CV-98-O, 2009 WL 2596610, at *3 (N.D. Tex. Aug. 24, 2009).

### 1.    *Monetary Damages*

Plaintiff requests an award of $448,716.56 in monetary damages from Defendant, which represents the wire payments from Customer that Defendant had diverted to his bank accounts from between August 2017 and April 2019. (doc. 23 at 3.)  The affidavit of Customer's owner states that Customer wired $448,716.56 in payments to Defendant for products it had purchased from Plaintiff, and details each wire, including the date and amount. (doc. 23-3 at 3-5.) The affidavit of Plaintiff's representative states that Plaintiff never received any of the wire payments that Customer sent to

---

[5]The fourth amended complaint also seeks exemplary and statutory damages, but Plaintiff does not request these damages in its motion for default judgment. (*See* doc. 23.)

Defendant, which totaled $448,716.56. (doc. 23-2 at 3.)  The evidence Plaintiff has presented supports the loss amount asserted.

Because Plaintiff's losses are itemized and capable of mathematical calculation, the amount of judgment can be reliably computed from the record and without a hearing. *See* Fed. R. Civ. P. 55(b)(2) ("*If*, in order to enable the court to enter judgment . . . it is necessary to take an account or to determine the amount of damages . . . the court *may* conduct such hearings or order such references as it deems necessary and proper . . .) (emphasis added); *see also James*, 6 F.3d at 310 (stating that the court relied on affidavits, documentary evidence, and the judge's personal knowledge of the record).  Based on the record, Plaintiff has shown that it is entitled to an award of $448,716.56 in compensatory damages against Defendant.

### 2.    *Attorney's Fees*

Plaintiff also seeks attorney's fees incurred in this lawsuit in the amount of $23,523.75. (doc. 23 at 3.)

### a.    **Entitlement to Attorney's Fees**

Texas law is applicable to the award of attorney's fees in diversity cases like this one. *See Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir. 2002).  Under Texas law, a party may recover attorney's fees only when allowed by statute or contract. *See Rohrmoos Venture v. UTSW DVA Healthcare, LLP*, 578 S.W.3d 469, 484 (Tex. 2019); *see also* Tex. Civ. Prac. & Rem. Code § 38.001(8). The TTLA provides that the prevailing party "in a suit under this chapter *shall* be awarded court costs and reasonable and necessary attorney's fees." Tex. Civ. Prac. & Rem. Code § 134.005(b) (emphasis added). The award of fees to the prevailing party under this statute is mandatory. *Merritt Hawkins & Assocs., L.L.C. v. Gresham*, 861 F.3d 143, 157 (5th Cir. 2017)

("Because the Theft Liability Act says the prevailing party 'shall' receive attorneys' fees, this award is mandatory.").

Because Plaintiff has set forth a sufficient basis as the prevailing party for its TTLA claim, it is entitled to its reasonable attorney's fees under Tex. Civ. Prac. & Rem. Code § 134.005(b).

### b.    Segregation of Attorney's Fees

"Texas law requires that '[i]f any attorney's fees relate solely to a claim for which such fees are unrecoverable, a claimant must segregate recoverable from unrecoverable fees.'" *ATOM Instrument Corp. v. Petroleum Analyzer Co., L.P.*, 969 F.3d 210, 217 (5th Cir. 2020) (quoting *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 313 (Tex. 2006)). An exception to the duty to segregate arises where both types of claims arise "out of the same transaction and are so interrelated that their prosecution or defense entails proof or denial of essentially the same facts." *Chapa*, 212 S.W.3d at 311 (citation and internal quotation omitted). If the causes of action for which fees are not recoverable by statute or contract are "intertwined to the point of being inseparable" with those for which fees are recoverable, the prevailing party may recover the entire amount of fees. *Id.* For example,

> [r]equests for standard disclosures, proof of background facts, depositions of primary actors, discovery motions and hearings, voir dire of the jury, and a host of other services may be necessary whether a claim is filed alone or with others. To the extent such services would have been incurred on a recoverable claim alone, they are not disallowed simply because they do double service.

*Id.* at 313. "The party seeking to recover attorney's fees bears the burden of demonstrating segregation is not required." *Lederer v. Lederer*, 561 S.W.3d 683, 701 (Tex. App.—Houston [14th Dist.] 2018, no pet.).

Here, Plaintiff provides the affidavit of its counsel stating that "the attorney's fees incurred

in this case do not require segregation because they are provided for discrete legal services that have advanced the recoverable attorneys, fees for theft under Texas Civil Practice and Remedies Code §134.005(b)[,] and the non- recoverable for fraud, conversion, and breach of fiduciary duty." (doc. 23-4 at 5.) As an example, it notes that "the preparation of the claims required the review of documents from the client and all documents required review because it all advanced Plaintiff's theft claim." (*Id.*) The billing invoices attached to the affidavit show that the legal fees are for time spent reviewing documents and developing the facts about the case, researching the claims and jurisdiction issues, drafting and serving the complaint, and preparing and filing pleadings for default judgment against Defendant. (*See id.* at 8-22.)

Plaintiff has shown that its requested fees relate to its theft claim under the TTLA, either directly or as part of its claims that are intertwined with the theft claim, or are based on discrete legal services necessary to advance both the theft claim and its other unrecoverable claims. *Chapa*, 212 S.W.3d at 311. At its core, Plaintiff's suit against Defendant is about the theft of over $400,000 in payments that Defendant stole from Plaintiff and the recovery of those stolen funds. Plaintiff's claims for theft, fraud, fraudulent concealment, breach of fiduciary duty, and conversion are all based on the same allegations of theft, with the alleged harm resulting from these claims being the loss of the same funds stolen by Defendant. Additionally, most of the incurred fees relate to hours worked on properly serving Defendant and pursuing default judgment, which are the type of services that "fall under the category described by the *Chapa* court as fees that are recoverable because they are necessary whether a claim is filed alone or with others." *Ye v. Zhang*, No. 4:18-CV-4729, 2021 WL 5862778, at *5 (S.D. Tex. Mar. 31, 2021) (citing *Chapa*, 212 S.W.3d at 314). Accordingly, Plaintiff has shown that segregation of its requested attorney's fees is unnecessary.

15

### c.    Reasonableness of Requested Attorney's Fees

Under Texas law, the party seeking to recover attorney's fees "bears the burden of establishing the fees are reasonable and necessary." *In re Nat'l Lloyds Ins. Co.*, 532 S.W.3d 794, 809 (Tex. 2017). In adjudicating an attorney's fee award, a court first calculates a "lodestar" fee by multiplying the reasonable number of hours expended on the case by the reasonable hourly rates for the participating lawyers. *See El Apple I, Ltd. v. Olivas*, 370 S.W.3d 757, 760 (Tex. 2012). The fee claimant bears the burden of providing sufficient evidence on both the reasonable hours worked and the reasonable rate. *Id.* "Sufficient evidence includes, at a minimum, evidence of (1) particular services performed, (2) who performed those services, (3) approximately when the services were performed, (4) the reasonable amount of time required to perform the services, and (5) the reasonable hourly rate for each person performing such services." *Rohrmoos Venture*, 578 S.W.3d at 502.

In Texas, uncontroverted attorney testimony or an affidavit testifying to the attorney's qualifications, reasonableness of the attorney's fees, and the basis for the opinion, may be sufficient to support an award of attorney's fees. *See Clary Corp. v. Smith*, 949 S.W.2d 452, 469 (Tex. App.–Fort Worth 1997, no writ) ("Where . . . trial counsel's testimony concerning attorneys' fees is clear, positive and direct, and uncontroverted, it is taken as true as a matter of law. This is especially true where the opposing party had the means and opportunity of disproving the testimony, if it were not true, and failed to do so."). "The court, as a trier of fact, may award attorneys' fees *as a matter of law* in such circumstances, especially when the opposing party has the means and opportunity of disproving the testimony or evidence and fails to do so." *Ragsdale v. Progressive Voters League*, 801 S.W.2d 880, 882 (Tex. 1990) (emphasis added).

16

Second, a court must consider whether the lodestar figure should be adjusted upward or downward to achieve a reasonable fee award depending on its analysis of several factors.[6] *Rohrmoos Venture*, 578 S.W.3d at 501. Because the lodestar is presumed to be reasonable, it should be modified only in exceptional cases. *See El Apple I*, 370 S.W.3d at 765 (citing *Perdue v. Kenny A.*, 559 U.S. 542, 552 (2010)). The party seeking an enhancement or reduction to the lodestar figure must provide specific evidence to overcome the presumptive reasonableness of the lodestar. *Rohrmoos Venture*, 578 S.W.3d at 501.

Here, Plaintiff submits an affidavit from its counsel, as well as corresponding billing records. (*See* doc. 23-4.) Counsel's affidavit sets out the background and qualifications of the legal professionals working on Plaintiff's case, and states that, based upon his knowledge, experience, and training, the hourly rates of $300.00 and $400.00 for attorney work and $125.00 for paralegal work were reasonable and consistent with rates charged in the local community. (*Id.* at 2-3.) It also states that the time expended by the legal professionals were reasonable considering the work performed in connection with the prosecution of Plaintiff's claims against Defendant. (*Id.* at 3-4.) The attached

---

[6]In *Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812 (Tex. 1997), the Texas Supreme Court identified the following factors to determine the reasonableness of attorney's fees:

> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill required to perform the legal service properly;
> (2) the likelihood . . . that the acceptance of the particular employment will preclude other employment by the lawyer;
> (3) the fee customarily charged in the locality for similar legal services;
> (4) the amount involved and the results obtained;
> (5) the time limitations imposed by the client or by the circumstances;
> (6) the nature and length of the professional relationship with the client;
> (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and
> (8) whether the fee is fixed or contingent on results obtained or uncertainty of collection before the legal services have been rendered.

*Id.* at 818 (citing Tex. Disciplinary R. Prof'l Conduct 1.04(b)).

billing records itemize the time spent on this case with details regarding the specific work performed by each legal professional and the charges for that time. (*Id.* at 8-22.)

Under Texas law, Plaintiff's evidence is "legally sufficient" for an award of attorney's fees. *See In re Estate of Tyner*, 292 S.W.3d 179, 184 (Tex. App–Tyler 2009, no pet.) ("[A]ttorney swore under oath that he is a licensed attorney, he is familiar with the reasonable and necessary attorney's fees charged for appeals in civil actions such as this case, he has personal knowledge of the services rendered to [the party] in this matter, and those services were reasonable, necessary, and customary. Thus, [the party's] attorney's affidavit sufficiently established reasonable attorney's fees and is legally sufficient to support the trial court's award of attorney's fees."). Plaintiff's lodestar figure represents a reasonable fee award and neither party argues for an adjustment to the lodestar. Considering the relevant factors, no adjustment to the lodestar figure is necessary. *See Arthur Andersen*, 945 S.W.2d at 818. Accordingly, Plaintiff should be awarded the full amount requested.

### 2. Pre-Judgment Interest

Plaintiff seeks pre-judgment interest. (doc. 23 at 3.)

"State law governs the award of prejudgment interest in diversity cases." *Meaux Surface Prot., Inc. v. Fogleman*, 607 F.3d 161, 172 (5th Cir. 2010). Under Texas law, the prevailing party is entitled to an equitable award of prejudgment interest as a matter of course. *Executone Info. Sys., Inc. v. Davis*, 26 F.3d 1314, 1329 (5th Cir. 1994); *see also Matter of Okedokun*, 968 F.3d 378, 392 (5th Cir. 2020). When, as here, "there is no specific enabling statute granting damages, Texas allows for the award of prejudgment interest under 'general principles of equity' and follows the principles currently set out in Tex. Fin.Code Ann. § 304." *L & C Consultants, LLC v. ASH Petroleum, Inc.*, No. CIV A 307-CV-1904-D, 2009 WL 3110200, at *10 (N.D. Tex. Sept. 29, 2009), *aff'd sub nom. by*

464 F. App'x 199 (5th Cir. 2010) (citing *Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 528 (Tex. 1998)).

"Texas common law allows prejudgment interest to accrue at the same rate as postjudgment interest." *Int'l Turbine Servs., Inc. v. VASP Brazilian Airlines*, 278 F.3d 494, 499 (5th Cir. 2002). The Texas Finance Code provides that the postjudgment interest rate is "five percent a year if the prime rate as published by the Board of Governors of the Federal Reserve System ... is less than five percent[.]" Tex. Fin. Code Ann. § 304.003(c)(2). The current prime rate is 7.75 percent,[7] which is greater than five percent. Prejudgment interest begins to accrue on the earlier of: (1) 180 days after the date the defendant received written notice of a claim; or (2) the date suit is filed. *See* Tex. Fin. Code Ann. § 304.104; *Kenneco Energy*, 962 S.W.2d at 532 (extending the statutory rule to prejudgment interest awards governed by the common law). Plaintiff does not allege facts stating when or whether Defendant received written notice of its claims. Accordingly, Plaintiff should be awarded prejudgment interest at the rate of 7.75 percent, calculated from the date it filed suit on May 24, 2021 until the date final judgment is entered.

### 3.    *Post-Judgment Interest*

Plaintiff seeks postjudgment interest. (docs. 23 at 3.)

"Post-judgment interest is awarded as a matter of course" under 28 U.S.C. § 1961(a). *Meaux Surface Prot., Inc. v. Fogleman*, 607 F.3d 161, 173 (5th Cir. 2010) (citing 28 U.S.C. § 1961(a)). Given that "district courts do not have the discretion to deny post-judgment interest on monetary judgments," *Paisano Capital SA de CV v. 23 Tex. Produce, Inc.*, No. 3:19-CV-0852-B, 2019 WL 3239152, at *5 (N.D. Tex. July 18, 2019) (citing *Fairmont Specialty Ins. Co. v. Apodaca*, 234 F.

---

[7]*See* Selected Interest Rates (Daily) - H.15, BOARD OF GOVERNORS OF THE FEDERAL RESERVE SYSTEM, https://www.federalreserve.gov/releases/H15/ (last visited March 6, 2023).

Supp.3d 843, 855 (S.D. Tex. 2017)), Plaintiff's request for post-judgment interest should be granted and awarded at the applicable federal rate[8] from the date of final judgment until it is paid in full.

## III.  RECOMMENDATION

Plaintiff's motion for default judgment should be **GRANTED**, and it should recover from Defendant: (a) compensatory damages in the amount of $448,716.56; (b) attorney's fees in the amount of $23,523.75; (c) pre-judgment interest at the rate of 7.75 percent from May 24, 2021 until the date that final judgment is entered; and (d) post-judgment interest at the applicable federal rate from the date of final judgment until paid in full.

**SO RECOMMENDED** on this 7th day of March, 2023.

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

---

[8]The post-judgment interest rate is based upon the applicable federal rate. *See* 28 U.S.C. § 1961.

## INSTRUCTIONS FOR SERVICE AND
## <u>NOTICE OF RIGHT TO APPEAL/OBJECT</u>

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F. 3d 1415, 1417 (5th Cir. 1996).

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE